UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JOHN SUGGS, ANDRE LANE, RICHARD ROSADO,
RAYMOND LAGREE, RYAN PRZESIEK,

                              Plaintiffs,

                                               9:13-CV-00359
v.

                                               (NAM/TWD)

DR. TERRI MAXYMILLIAN, *et al.*,

                              Defendants.
_____

APPEARANCES:                                OF COUNSEL:

BOND, SCHOENECK & KING, PLLC        GEORGE H. LOWE, ESQ.
Counsel for Plaintiffs
One Lincoln Center
Syracuse, New York 13202

HON. ERIC T. SCHNEIDERMAN          CHRISTOPHER W. HALL, ESQ.
Attorney General for the State of New York    Assistant Attorney General
Counsel for Defendants
The Capitol
Albany, New York 12224

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## REPORT-RECOMMENDATION

     Plaintiffs John Suggs ("Suggs"), Andre Lane ("Lane"), Richard Rosado ("Rosado"),

Raymond Lagree ("Lagree"), and Ryan Przesiek ("Przesiek"), all of whom have been

involuntarily confined in the Sex Offender Treatment Program ("SOTP") at the Central New

York Psychiatric Center ("CNYPC") pursuant to Article 10 of the New York State Mental Health

Law ("MHL"), commenced this civil rights action seeking injunctive and declaratory relief under

42 U.S.C. § 1983.[1]  Dr. Terri Maxymillian ("Maxymillian"), Director of the SOTP; Jeffrey

Nowicki ("Nowicki"), Chief of Mental Health Treatment Services for the SOTP at CNYPC;

Maureen Bosco ("Bosco"), former Executive Director at CNYPC; and Kristin Woodlock

("Woodlock"), former Acting Commissioner of the New York Office of Mental Health ("OMH")

were named as original Defendants.[2]  In their pro se complaint, filed on April 1, 2013, Plaintiffs

claim that their constitutional rights are being violated with regard to the denial of access to the

courts, their conditions of confinement, and the free expression of their religious beliefs.  (Dkt.

No. 1.)

## I.      PROCEDURAL BACKGROUND

Plaintiffs moved for appointment of counsel at the time they filed the complaint, and the

Court denied the motion without prejudice on June 6, 2013.  (Dkt. Nos. 7 and 8.)  Defendants

answered the complaint on August 16, 2013 (Dkt. No. 17), and the Court issued a Mandatory

Pretrial Discovery and Scheduling Order ("Scheduling Order") on August 19, 2013.  (Dkt. No.

---

[1]  Michael Hogan ("Hogan"), former Commissioner of the New York State Office of Mental Health, was originally named as a defendant.  (Dkt. No. 1 at 4.)  The action was dismissed on Eleventh Amendment grounds as against the now retired Hogan by the Hon. Norman A. Mordue, Senior United States District Judge, in a Decision and Order dated June 20, 2013.  (Dkt. No. 8.)

[2]  The Court takes judicial notice that Peter Russell ("Russell") is currently the Acting Executive Director of CNYPC, and Ann Sullivan, M.D. ("Sullivan") is currently the Commissioner of the New York OMH.  *See* https://www.omh.ny.gov/omhweb/aboutomh/omh_facility.html (last visited September 11, 2015).  Under Federal Rule of Civil Procedure 25(d), a public "officer's successor is automatically substituted as a party" when an "officer who is a party in an official capacity . . . ceases to hold office while the action is pending."  Because Plaintiffs are seeking declaratory and injunctive relief against Defendants in their official capacities in this lawsuit, Russell and Sullivan, have been substituted for Bosco and Woodlock as defendants, respectively, and will be treated as defendants for purposes of this Order and Report-Recommendation.  Russell and Sullivan have also been substituted as defendants in the proposed first amended complaint.  (*See* Dkt. Nos. 51-2 at 1-2; 52-2 at 4-6.)

2

19.)  The Scheduling Order directed that discovery be completed by December 16, 2013, and that dispositive motions be filed by March 17, 2014.  *Id.*

Plaintiffs filed a second application for appointment of counsel on August 27, 2013. (Dkt. No. 20.)  In the application, Suggs stated that Plaintiffs were unable to prepare an adequate defense without access to a law library where they could properly research the law to respond to motions and court orders.  *Id.* at ¶ B.  Suggs referenced the Scheduling Order and explained that Plaintiffs were at a big disadvantage in meeting the court imposed deadlines because they did not have access to the documents they needed, which were in Defendants' possession, and they did not have access to a copier.  *Id.* at ¶ B 1-2.  According to Suggs, Plaintiffs were not allowed to come together for legal discussions on the case because they were in separate buildings, and that in addition to having no access to a law library, they were not allowed access to a computer to research the law and prepare legal motions.  *Id.* at ¶ B 3-4.

Suggs explained in his application that Plaintiffs had requested help from Mental Hygiene Legal Service ("MHLS") and been told that MHLS was not allowed to assist in the civil action that the only matters they could assist in were those under Article 10 of the MHL.  *Id.* at ¶ C. According to Suggs, Plaintiffs did not have funds to pay for a lawyer.  *Id.*  Suggs requested that if the Court did not feel it necessary to appoint counsel, it order in the alternative that Defendants allow Plaintiffs access to one another and access to a law library or a computer on which they could do legal research.[3]  *Id.* at ¶ D.

_____

[3]  *See Pollack v. Holanchock*, No. 10 CV 2402(RPP), 2011 WL 4867558, at *2, [no LEXIS citation] (S.D.N.Y. Oct. 13, 2011) (finding that the Mid-Hudson Psychiatric Center, a secure adult forensic psychiatric inpatient facility, had eliminated its law library, and the MHLS did not represent the plaintiff in his denial of access to court litigation, the district court ordered, as temporary relief, that the plaintiff be provided with free internet access of Findlaw and

Defendants filed a memorandum of law in opposition to Plaintiffs' application on September 11, 2013. (Dkt. No. 22.) Defendants argued that: (1) the Court was without jurisdiction to grant the alternative relief requested by Plaintiffs, i.e. access to one another and to a law library or computerized legal research, because CNYPC was a nonparty state agency entitled to Eleventh Amendment protection, *id*. at 3-4; (2) the request that Plaintiffs be allowed access to one another without staff oversight lacked merit because it would seriously interfere with the day-to-day operation of the facility and violate policies designed to maintain a safe and therapeutic environment, *id*. at 4-5; (3) MHL § 47.03, which specifically references MHL Article 9 but makes no reference to Article 10, "appeared" to authorize MHLS to provide legal services to Plaintiffs in this action, *id*. at 5; and (4) allowing Plaintiffs access to a computer to do legal research was contrary to CNYPC policy because in the past when CNYPC attempted to implement a computer laboratory, some residents made improper use of the computers, resulting in the decision that residents would generally not be allowed access to computers. *Id*. at 6-7.

The Court granted Plaintiffs' request for appointment of counsel by Decision and Order filed on March 28, 2014. (Dkt. No. 31.) In that Order, the Court also stayed the remaining pre-trial deadlines pending further order. *Id*. By Order of September 2, 2014, the Court appointed the law firm of Bond, Schoeneck & King, PLLC, as pro bono counsel for Plaintiffs in the action. (Dkt. No. 33.) Approximately three months after appointment of pro bono counsel, Defendants moved for summary judgment.[4] (Dkt. No. 37.) Plaintiffs filed papers in opposition to

Wikipedia Legal Research, as well as access to fax, and incoming and outgoing legal correspondence to conduct the ongoing litigations to which he was a party).

[4] During a telephone conference with the Court on October 2, 2014, Defense counsel stated that Federal Rule of Civil Procedure 26 disclosures were complete and all discovery had

Defendants' motion (Dkt. No. 39), to which Defendants replied. (Dkt. No. 40.) Plaintiffs' request to file a sur-reply was granted. (Dkt. Nos. 41, 42.)

Before filing the sur-reply, Plaintiffs' pro bono counsel requested additional time to file an amended complaint alleging unconstitutional conditions of confinement, a denial of access to the courts claim regarding the lack of a law library, and a religious freedom claim.[5] (Dkt. No. 43.) Plaintiffs have now moved for leave to file a first amended complaint (Dkt. No. 51) and have filed their sur-reply to Defendants' motion for summary judgment. (Dkt. No. 52.) Defendants have opposed Plaintiffs' motion for leave to file their proposed first amended complaint on futility grounds. (Dkt. No. 53.) Plaintiffs have filed a sur-reply in support of their motion to amend. (Dkt. No. 57.)

Both motions are presently before the Court. For reasons explained below, the Court recommends that Plaintiffs' motion for leave to file their first amended complaint be granted and that Defendants' motion for summary judgment be denied without prejudice to refiling after the conclusion of discovery.

---

been provided to Plaintiffs. Pro bono counsel for Plaintiffs indicated at that time that Plaintiffs needed no further discovery from Defendants before the filing of dispositive motions. A deadline of December 5, 2014, was set for dispositive motions. (Dkt., October 2, 2014,Text Order.)

[5] During a March 20, 2015, status conference call with the Court, counsel were directed to discuss whether the case would go forward with an amended complaint, or the parties would stipulate to discontinue the action without prejudice and Plaintiffs would bring a new action. (Dkt., March 20, 2015, Text Minute Entry). The case was stayed until June 18, 2015. *Id.* During a June 18, 2015, status conference call, Plaintiffs' counsel reported that after discussion, the case would move forward with an amended complaint (Dkt., June 18, 2015, Text Minute Entry) and by Text Order, dated June 18, 2015, the Court granted Plaintiffs' request to move for leave to file an amended complaint (Dkt. No. 43), and again granted permission to file a sur-reply to Defendants' summary judgment motion. (Dkt., June 18, 2015, Text Order.)

## II. PLAINTIFFS' PRO SE COMPLAINT

Plaintiff Suggs has been confined at CNYPC since September 9, 2009; Plaintiff Lane since August 25, 2006; Plaintiff Rosado since February 28, 2008; and Plaintiff Przesiek since December 13, 2006.[6] (Dkt. No. 1-2.)  The allegations in Plaintiffs' pro se complaint (Dkt. No. 1) challenge the conditions of their confinement in CNYPC as violative of their due process rights under the Fourteenth Amendment, the denial of their right of access to court as violative of their First Amendment rights, and the denial of their First Amendment right to religious expression.

### A.    Conditions of Confinement

####    1.    Restraints Used During Transport

According to Plaintiffs, when they are taken outside of the facility, they are handcuffed with a Department of Corrections black box, waist chains, leg shackles, and a short chain between the black box and leg shackles.  (Dkt. No. 1 at 5-6.)

####    2.    Communications

Plaintiffs allege that they are not allowed to watch local news on television or to possess or read any news publication from within sixty-five miles of CNYPC.  (Dkt. No. 1 at 6.)  In addition, they are not allowed to possess or read the *New York Daily News*, the *New York Post*, the *New York City Village Voice*, or the *New York City Islamic News*.  *Id*. at 5-6.

####    3.    Personal Electronic Devices

Plaintiffs claim that they are not allowed to possess personal televisions, phones,

---

[6]  In his Affirmation dated July 24, 2015 (Dkt. No. 51-2 at 1), pro bono counsel George H. Lowe, Esq. has stated upon information and belief that Plaintiff Lagree, who had been confined at CNYPC June 2, 2011, has been released from commitment.  Lagree has not been included as a plaintiff in Plaintiff's proposed first amended complaint.  (Dkt. No. 52-2 at 4.)

computers/laptops, MP3 players, and CDs, DVDs and their players.  (Dkt. No. 1 at 6.)

4.    Visitation

Plaintiffs allege that visitors must call and request permission to visit them; can visit only

on Saturdays regardless of the visitor's schedule; and cannot bring food into CNYPC or send food

packages.  (Dkt. No. 1 at 7.)  Plaintiffs further allege that visits are denied/prohibited by the

Treatment Team Leader without proper authorization by the treating doctor; visitation privileges

are taken away for non-compliance with the program; and Plaintiffs are pat frisked before visits

and strip searched after visits.  *Id*. at 6.

5.    Safety of Conditions

Plaintiffs claim that they are deprived of the right to safe conditions that are free of

physical and mental abuse and physical and chemical restraint, as well as the right to voice

concerns without retribution.  (Dkt. No. 1 at 7.)  They complain of Secure Care Treatment

Assistants being given "carte blanche" to punish using physical restraints and the Treatment Team

depriving Plaintiffs of their constitutional rights without due process; searches without probable

cause; arbitrary on the spot rules and rule changes by Secure Care Treatment Assistant II's to

accommodate staff whims or moods; making Plaintiffs compliant through fear of physical abuse;

and lack of ventilation and air-conditioning.  *Id*. at 8.

6.    Equal Protection

Plaintiffs allege they are being denied equal protection by not being allowed personal

typewriters, musical instruments, or bed clothes; not being allowed to work; having free access to

the dayroom, sleeping room, gym/activity center, drinking cups, books for entertainment,

education and religious practices, and radios considered "privileges" that can be taken away as

punishment; being denied/deprived of anything and everything for not participating in treatment; being denied advancement in treatment for not taking responsibility for unsubstantiated, uncharged, dismissed, vacated, and overturned crimes and convictions; being denied access to programs for not admitting to something not in the official record; having fewer rights as an involuntarily committed resident of CNYPC than as an inmate in the Department of Corrections and Community Supervision ("DOCCS") system; and being discriminated against by not having equal protection with regard to religious practice. (Dkt. No. 1 at 8-9.)

       7.     <u>No Board of Visitors Consisting of Staff and Non-Staff</u>

According to Plaintiffs, CNYPC should have a Board of Visitors consisting of staff and non-staff members, one of whom should be a resident's family member. (Dkt. No. 1 at 9.)

**B.    Denial of Access to Court**

Plaintiffs also allege in their pro se complaint that they do not have access to a law library; they must use their own funds, stamps, and phone minutes to contact MHLS attorneys or private attorneys; MHLS attorneys were stripped of their ability to enter the building at will and can only see clients once a week and only by pre-scheduling with administration in writing; and when attorneys call, they are not allowed to speak to Plaintiffs if they are not on the ward. (Dkt. No. 1 at 7.)

**III.    PLAINTIFFS' COUNSELED FIRST AMENDED COMPLAINT**

As noted above, Plaintiffs, through their pro bono counsel, have moved to file a first amended complaint. The proposed first amended complaint (Dkt. No. 52-2 at 4-13) includes a claim for denial of access to the courts in violation of Plaintiffs First and Fourteenth Amendment rights, a number of conditions of confinement claims alleging the violation of their Fourteenth

Amendment right to due process, and a First Amendment free exercise of religion claim.

## A.    Denial of Access to the Courts

Both Plaintiffs' pro se complaint and proposed first amended complaint include claims for the denial of access to the courts.  (Dkt. No. 52-2 at ¶ 10.)  The denial of access to court claim asserted in the proposed first amended complaint, while also alleging denial of a law library, provides significantly more factual detail regarding the unavailability of MHLS attorneys to assist Plaintiffs in pursuing their conditions of confinement claims.  Plaintiffs allege that they sought the assistance of MHLS attorneys with regard to their conditions of confinement claims and that, upon information and belief, those attorneys were unable to assist them because of other responsibilities and obligations.  *Id*. at ¶ 11.  The allegation in the proposed first amended complaint is in accord with the statement in Suggs' application for appointment of counsel that MHLS was not allowed to assist in the civil action.  (Dkt. No. 20 at ¶ C.)

According to Plaintiffs proposed first amended complaint, during the time they were seeking the assistance of MHLS attorneys, MHLS had a staff of approximately 35 attorneys, including management, who were to advise and represent inpatients at 193 different hospitals, developmental facilities, and other facilities spanning twenty counties in upstate New York.  (Dkt. No. 52-2 at ¶ 12 and pp. 15-24.)  Plaintiffs allege, upon information and belief, that since the enactment of the New York Sex Offender Management and Treatment Act in March 2007, MHLS attorneys have devoted much of their time to the Act's procedures aimed at confining persons who are believed to be "sex offenders requiring civil commitment," as codified in MHL Article 10, at the expense of MHLS' other work, and resulting in a drain on MHLS' resources.  *Id.* at ¶ 13. Plaintiffs assert that given the unavailability of MHLS attorneys and Defendants' knowing and

deliberate failure to provide a law library, they have been denied access to the courts during their involuntary commitment in violation of their rights under the First and Fourteenth Amendments. *Id*. at ¶¶ 11, 14.

**B.     Conditions of Confinement Claims**

Plaintiffs proposed first amended complaint, as with their pro se complaint, contains a number of claims regarding conditions of confinement which Plaintiffs contend constitute a punitive system of detention in violation of the due process clause of the Fourteenth Amendment. (*See generally* Dkt. No. 52-2.)

1.     Failure to Provide Treatment

Plaintiffs proposed Amended Complaint includes a claim for failure to provide treatment at CNYPC.  (Dkt. No. 52-2 at ¶¶ 15-17.)  Plaintiffs claim that they spend no more than six or seven hours per week in "treatment," that the treatment staff is not qualified to treat sex offenders, and that Plaintiffs remain in the same treatment phase for years, during which time the substance of the treatment program is basically recycled.  *Id*.

2.     Failure to Provide Training

Plaintiffs allege that while in SOTP, assignments to facility employment opportunities are severely limited, and that Plaintiffs are provided with no vocational training, which was available to them while they were incarcerated in the DOCCS system.  (Dkt. No. 52-2 at ¶¶ 18-19.)  As a result of the lack of access to employment and vocational training, Plaintiffs are left wholly unprepared for re-entry into society, should they at some point be released from CNYPC.  *Id*. at ¶ 20.

3.     Lack of Access to Media

Plaintiffs claim that during their involuntary confinement at CNYPC, they are prohibited by Defendants from having access to personal television sets and other electronic devices they were allowed to own and use while incarcerated in the DOCCS system.  (Dkt. No. 52-2 at ¶ 21.) In addition, Plaintiffs allege that in the DOCCS system, they were allowed to subscribe to and possess a wide range of printed material, including books, magazines, and newspapers.  *Id.* at ¶ 22.  At CNYPC, on the other hand, Defendants have allegedly imposed punitive and arbitrary restrictions on Plaintiffs' access to mainstream printed materials, including, among others, the *New York Post*, the *New York Daily News*, the *New York Islamic News*, *Esquire*, *Field & Stream*, *Flex*, *Men's Fitness*, *Rob Report*, *Rolling Stone*, *Sportsman Guide*, *Men's Health*, *Computer Gamer*, *Gentlemen's Quarterly*, *Go NYC*, *Democrat Chronicle*, *Maxim*, *Low Rider*, *Jet*, *ESPN-The Body Issue*, *Tattoo Life*, *Hunting Illustrated*, *Game Informer*, *National Geographic*, *North American Hunter*, *Rides*, *Cosmo*, *Vanity Fair*, *National Enquirer*, *Old Cars*, *Outdoor Life*, *Auto Trader*, and *Auto Locator*.  *Id.* at ¶ 22.

Plaintiffs further claim that Defendants have adopted and enforced a policy that denies all persons confined at CNYPC access to local news programming and newspapers published within a 65 mile radius of CNYPC    restrictions that were not applied to Plaintiffs while they were incarcerated in the DOCCS system.  *Id.* at ¶ 23.

Plaintiffs contend that although there were some restrictions on their access to movies, computers/laptops, videos, MP3 players, CDs, and DVDs while they were confined in the DOCCS system, Defendants' policies and rules at CNYPC are more severely restrictive.  *Id.* at ¶

24.

### 4. Defendants' Visitor Program

Plaintiffs allege that visitation at CNYPC is more restrictive than when they were incarcerated in the DOCCS system and is, in fact, so restrictive as to be punitive. (Dkt. No. 52-2 at ¶ 25.) At CNYPC, visitors must contact a facility official seven days in advance to make visitation arrangements and be placed on the scheduled visitor list. *Id*. In addition, in Building 39 where Plaintiff Rosado is housed, visitation is allowed only on Saturdays from 9:45am to 2:45pm, and visitors are not allowed to bring in food. *Id*.

### 5. Use of Punitive Physical Restraints

Plaintiffs claim, as they did in their pro se complaint, that when they are taken outside of CNYPC, they are placed in extremely painful, punitive restraints, including the "black prison box" and waist chains, often for an extended period of time. (Dkt. No. 52-2 at ¶ 26.) In their proposed first amended complaint, Plaintiff also allege, upon information and belief, that such painful restraints are not used at the St. Lawrence County Psychiatric Center and Manhattan Psychiatric Center where persons in SOTPs are committed, or at local and county jails. *Id*.

### 6. Arbitrary, Capricious and Punitive Privileging System

Plaintiffs challenge the CNYPC policy implementing a "privileging" system. (Dkt. No. 52-2 at ¶ 27.) The policy states:

> Privileges are explicit rewards that are afforded based upon positive conduct and attitudes as well as overall clinical progress in the program. Negative consequences are prescribed for behaviors and attitudes that violate the rules of the program or that persistently fail to meet community expectations.

*Id*. Plaintiffs contend that having been involuntarily committed to CNYPC by a court following

the completion of their prison sentence, they have to be there, but they should not have to endure "negative consequences" based upon whether or not they are perceived to have exhibited "positive conduct and attitudes" or to be making "clinical progress in the program," or to be "persistently fail[ing] to meet community expectations." *Id*. at ¶ 28. Plaintiffs allege that Defendants' practice of imposing "negative consequences" for minor infractions is, in practice, "arbitrary, capricious and unconstitutionally punitive." *Id*. at ¶ 29.

### C.     Inadequate Accommodation of Plaintiffs' Religious Practices

Plaintiffs Rosado and Suggs also claim that their rights under the Free Exercise Clause of the First Amendment are being violated. (Dkt. No. 52-2 at ¶ 45.) Rosado alleges that he is a follower of Neopaganism, and that there is no spiritual leader available and he is not allowed to practice the traditions of his religion at CNYPC. *Id*. at ¶ 30. Suggs alleges that he is a Muslim who follows the traditions of Islam, and that he has limited access to an Imam, to an appropriate location for worship, and to Islamic media at CNYPC. *Id*. at ¶ 31.

### D.     Relief Requested

As with Plaintiffs' pro se complaint, the proposed first amended complaint seeks declaratory and injunctive relief. (Dkt. No. 52-2 at 12.) More specifically, Plaintiffs demand judgment: (1) declaring that Defendants' policies and actions, as described in the proposed amended complaint, are in violation of Plaintiffs' constitutional rights; (2) enjoining Defendants and their agents and employees from enforcing the unconstitutional policies and from continuing to engage in the unconstitutional actions described in the proposed first amended complaint; and (3) directing Defendants to establish a law library that is accessible to Plaintiffs at CNYPC. *Id*.

Plaintiffs, as in their pro se complaint, have included no claim for compensatory damages

in their proposed first amended complaint. *Id*. They have, however, added a claim for attorneys fees and costs pursuant to 42 U. S. C. §1988. *Id*.

## IV.    ANALYSIS

Now before the Court are Defendants' motion for summary judgment and Plaintiffs' motion for leave to amend their complaint. (Dkt. Nos. 37 and 51.)

### A.    Legal Standard for Motion to Amend

Under Federal Rule of Civil Procedure 15(a), leave to amend a complaint should be "freely" granted "when justice so requires." Fed.R.Civ.P. 15(a). A motion to amend should not be denied unless there is evidence of undue delay, bad faith, prejudice to the non-movant, or futility. *Foman v. Davis*, 371 U.S. 178, 182 (1962). The decision to grant or deny a motion to amend is within the sound discretion of the district court. *Id*. A *pro se* complaint "should not [be] dismiss[ed] without [the Court] granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (quoting *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir. 1991).

Defendants have opposed Plaintiffs' motion for leave to amend on futility grounds. (Dkt. No. 53.) The clearly articulated Second Circuit standard applicable to a determination of whether leave to amend should be denied on the basis of futility is: "An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6)." *Lucente v. Int'l Bus. Machs. Corp*., 310 F.3d 243, 258 (2d Cir. 2002). However, the Second Circuit has applied a different rule where a cross-motion to amend the complaint is made in response to a motion for summary judgment, "and the parties have fully briefed the issue whether the proposed amended complaint could raise a genuine issue of fact and have presented all

14

relevant evidence in support of their positions." *Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001). In that case, "even if the amended complaint would state a valid claim on its face, the court may deny the amendment as futile when the evidence in support of the plaintiff's proposed new claim creates no triable issue of fact and the defendants would be entitled to judgment as a matter of law under Fed.R.Civ.P. 56(c)." *Id.*

### B. Plaintiffs' Motion for Leave to Amend and Federal Rule of Civil Procedure Rule 56(d) Affirmation

The Court finds that the history of this litigation has substantial relevance in the consideration of the standard to be applied with regard to Plaintiffs' motion for leave to amend in that it reveals that Plaintiffs are greatly disadvantaged in "present[ing] all relevant evidence in support of their position[ ]" in opposition to Defendants' summary judgment motion as a result of the lack of pre-motion counseled discovery. *Milanese*, 244 F.3d at 110.

Defendants' opposition to Plaintiffs' motion on futility grounds relies in part upon the Court's October 2, 2014, Text Order, which indicates Defendants had complied with the Court's mandatory disclosure order, and pro bono counsel had "advise[d] the Court that plaintiffs need no other discovery from defendants before filing of motions." (Dkt. No. 53 at 3.) However, in his Federal Rule of Civil Procedure 56(d)[7] Affirmation requesting an order denying Defendants'

---

[7] Fed.R.Civ.P. 56(d), formerly subdivision 56(f), provides that:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>
> (1)     defer considering the motion or deny it;
>
> (2)     allow time to obtain affidavits or declarations or to take discovery; or

summary judgment motion and scheduling a Rule 16 conference, Plaintiffs' pro bono counsel

explained the reasoning behind his initial agreement to move forward with dispositive motions

only three months after being appointed and with no further discovery:

> 5.      As a practical matter, there has been little discovery in this
> case.  (Pursuant to the Court's mandatory disclosure order, the
> defendants previously produced the exhibits attached to the
> Nowicki affidavit.)  Despite this, I agreed with defendants' counsel
> that a prompt summary judgment motion would be appropriate.
> Text Minute Entry, 10/2/14.  I saw no reason to waste everyone's
> time on discovery if <u>undisputed</u> facts and the applicable law made
> it clear that plaintiffs could not state a meritorious cause of action.
> But I did not foresee the Nowicki affidavit.

(Dkt. No. 39-1 at ¶ 5.)

Pro bono counsel elaborated, noting that the Nowicki Affidavit was silent with respect to

who created the CNYPC policies and procedures; how it was done; the professional literature,

studies, research, and data considered; and whether less restrictive conditions of confinement were

considered.  *Id*. at ¶ 6.  Defendants, according to Plaintiffs' counsel, argued in totally conclusory

fashion and with no factual basis, that the CNYPC conditions of confinement "result from

policies formulated by mental health professionals" and "are the product of *appropriate*

professional judgment."  *Id*.  Nowicki's Reply Affidavit provides additional information regarding

his qualifications, time spent consulting with experts in the field, and the individuals involved in

the creation of the policies submitted in support of Defendants' motion for summary judgment.

(Dkt. No. 40-1.)  However, the information Nowicki has elected to include in his Reply Affidavit

is no substitute for counseled discovery from Nowicki and the other Defendants, or from non-

parties identified in the Nowicki Reply Affidavit, with regard to the creation, implementation, and

---

(3)      issue any other appropriate order.

enforcement of the policies and procedures complained of by Plaintiffs, as well as any monitoring of their effectiveness.

A nonmoving party should not be "railroaded" into his offer of proof on a summary judgment motion. *See Trebor Sportswear Co., Inc. v. The Limited Stores, Inc.*, 865 F.2d 506, 511 (2d Cir. 1989) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986)). The nonmoving party must have "had the opportunity to discover information that is essential to his opposition" to the motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.5 (1986). Rule 56(d) "is a safeguard against premature grants of summary judgment and should be applied with a spirit of liberality." *Holmes v. Lorch*, 329 F. Supp. 2d 516, 529 (S.D.N.Y. 2004); *Delphi-Delco Electronics Systems v. M/V NEDLLOYD EUROPA*, 324 F. Supp. 2d 403, 417-18 (S.D.N.Y. 2004) (Rule 56(d) "is an important safeguard against improvident or premature motions for summary judgment, courts generally avoid overly technical rulings under this subdivision and apply it with a spirit of liberality.") (citation and internal quotation marks omitted). The grant of relief pursuant to Rule 56(d) is within the discretion of the court. *See United States v. Private Sanitation Indus. Ass'n Nassau/Suffolk, Inc.*, 995 F.2d 375, 377 (2d Cir. 1993).

Given the absence of counseled discovery in this case, Plaintiffs' Rule 56(d) Affirmation in opposition to Defendants' summary judgment motion, and, as discussed below, Plaintiffs' lack of access to a law library, computerized legal research, and assistance from MHLS, the Court concludes that the Second Circuit rule applied in *Lucente*, 310 F.3d at 58, rather than the rule in *Milanese*, 244 F.3d at 110, should be applied in assessing Defendants' argument that Plaintiffs' motion for leave to amend their complaint is futile. However, as discussed below, the Court finds that even if the District Court concludes that the *Milanese* rule must be applied, despite the

absence of counseled discovery pre-summary judgment and Plaintiffs' Rule 56(d) request, Plaintiffs have adequately shown that there are triable issues of fact with regard to claims asserted in their proposed first amended complaint.

## C. Denial of Access to the Courts Claim in Plaintiffs' Proposed First Amended Complaint

It is well-established that prisoners have a constitutional right to access the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). "Undeniably[,] the civilly committed patients [at CNYPC], like convicted inmates, enjoy a First Amendment right of meaningful access to the courts." *McChesney v. Hogan*, No. 9:08-CV-0163 (FJS/DEP), 2010 WL 3602660, at *12, 2010 U.S. Dist. LEXIS 92948, at *37 (N.D.N.Y. Aug. 17, 2010) (citing *Lane v. Carpinello*, No. 9:07-cv-751 (GLS/DEP), 2009 WL 3074344, at * 24, 2009 U.S. Dist. LEXIS 88345, at * 84 (N.D.N.Y. Sept. 24, 2009). The right of access requires prison authorities "to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds*, 430 U.S. at 828.

In *Lewis v. Casey*, 518 U.S. 343, 351 (1996), the Supreme Court explained that

> prison law libraries and legal assistance programs are not ends in themselves, but only the means for ensuring a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts. . . . Because *Bounds* did not create an abstract, freestanding right to a law library or legal assistance, an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense.

Under *Lewis*, an inmate "must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." *Id*. A plaintiff must show that a defendant's interference caused him actual injury that "a nonfrivolous

18

legal claim had been frustrated or was being impeded" as a result of defendant's actions.  *Lewis,* 518 U.S. at 353.

1.    <u>Claim of Denial of Law Library or Adequate Legal Assistance</u>

In this case, Defendants have conceded that CNYPC has no law library and that Plaintiffs are not allowed access to computerized legal research.  (Dkt. Nos. 22 at 6-7; 37-2 at ¶ 52.) In support of their motion for summary judgment, Defendants claim in conclusory fashion that residents who wish to challenge admission, retention, or care and treatment are afforded access to MHLS for legal services and assistance.  (Dkt. No. 37-2 at ¶ 53.)  In their opposition to Plaintiffs' motion to amend, Defendants do not dispute Plaintiffs' allegation that the MHLS caseload is too great for them to render effective assistance of counsel to Plaintiffs.  (Dkt. No. 53 at 4.)  They instead argue that even if that is true, it is beyond their control because MHLS is an independent state agency.[8]  *Id*. at 4-5.  Immediately thereafter, Defendants fall back on the conclusory assertion in their summary judgment motion that residents who wish to challenge care and treatment at CNYPC are afforded access to MHLS attorneys.  *Id*. at 4-5.

In his application for appointment of counsel, or in the alternative for access to a law library or computerized legal research, signed under penalty of perjury, Plaintiff Suggs explained that Plaintiffs had requested help from MHLS and been told MHLS was not allowed to assist in the civil action.  (Dkt. No. 20 at ¶ C.)  Defendants sole response was that MHL § 47.03 "appeared" to authorize MHLS to provide legal services to Plaintiffs in the lawsuit.  (Dkt. No. 22

_____

[8]  Plaintiffs do not appear to be claiming that Defendants are responsible for ensuring that MHLS provide them with legal assistance.  Rather, they are claiming that Defendants, who include the OMH Commissioner, SOTP Director, CNYPC Executive Director, and Chief of Mental Health Treatment Services for the SOTP at CNYPC, are denying Plaintiffs' First Amendment right to access to the courts by not providing either a law library or legal assistance.

at 5.)  The provision relied upon by Defendants contains no reference to conditions of confinement claims by individuals civilly confined under Article 10 of the MHL.

In support of the allegation in their proposed first amended complaint that MHLS was not available to assist Plaintiffs because of the MHLS attorneys' other responsibilities, Plaintiffs have included statistics showing that MHLS attorneys are not only severely short staffed given the number of facilities and clients, but that MHLS's focus on the Article 10 commitment procedures has occurred at the expense of MHLS's other work and resulted in a drain on MHLS resources. (Dkt. No. 52-2 at ¶¶ 11-15 and pp. 14-24.)

The extent to which, if at all, MHLS is tasked with providing legal assistance to individuals confined under Article 10 on conditions of confinement claims is not entirely clear from the language of MHL Article 10 or MHL § 47.03, which sets forth the functions, powers, and duties of MHLS.[9]  The only specific reference to MHL Article 10 in MHL § 47.03 is at subsection (f), which provides that one of the duties of MHLS is "[t]o provide legal services and assistance in accordance with article ten of this chapter."  MLH § 10.06(c), dealing with judicial proceedings for the civil commitment or supervision of sex offenders, for which sex offenders are entitled to the appointment of counsel, provides that when a civil management petition is filed, "[t]he court shall appoint the mental hygiene legal service if possible."  MHL § 10.11 provides for the involvement of MHLS when the regimen of strict and intensive supervision and treatment imposed on a sex offender released into the community is revoked.  MHL § 10.13, addressing appeals from orders issued under Article 10, provides for the appointment of counsel in

_____

[9]  *See Pollack v. Holanchock*, No. 10 CV 2402 (RPP), 2012 WL 1646893, at * 3, 2012 U.S. Dist. LEXIS 66033, at *11 (S.D.N.Y. May 10, 2012) ("Retention proceedings and admission proceedings are the raison d'être of MHLS.")

connection with appeals and states that "[i]f possible, the court shall appoint the mental hygiene legal service." Defendants have cited no provision in the MHL specifically tasking MHLS with providing legal assistance in conditions of confinement matters to those civilly confined under Article 10.

### 2. Actual Injury

Defendants contend that the denial of access to the courts claim is futile because Plaintiffs have failed to allege actual injury as a result of the lack of access to a law library and to legal assistance. (Dkt. No. 53 at 5.) The Court disagrees.

In *Youngberg v. Romeo*, 457 U.S. 307, 321-22 (1982), the Supreme Court directed that "[p]ersons who have been involuntarily committed are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." In their pro se complaint, Plaintiffs asserted a number of conditions of confinement claims against Defendants, including, *inter alia*, the use of restraints, severely restricted access to media, not being allowed personal electronics, restrictive visitation policies, physical and mental abuse, lack of the right to voice concerns without retribution, and the "privilege" "punishment" system employed. (*See generally* Dkt. No. 1.) Plaintiffs also asserted, albeit in equal protection terms, a First Amendment free exercise of religion claim. *Id*. at ¶ 6. Plaintiffs' conditions of confinement and free exercise of religion claims all survived initial review conducted pursuant to 28 U.S.C. § 1915(e)(2)(B).[10] (Dkt. No. 8 at 6.) Defendants made no attempt to seek dismissal of

---

[10] 28 U.S.C. § 1915(e) directs that when a plaintiff proceeds *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

Plaintiffs' conditions of confinement or free exercise of religion claims for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 17.)

Plaintiffs, who initially attempted to litigate their claims with no access to a law library or computerized legal research and no legal assistance, realized it was too formidable an undertaking and, after the Scheduling Order had been issued, turned to the Court for help in the form of access to a law library or computerized legal research or appointment of pro bono counsel.[11] (Dkt. No. 20.)

The proposed first amended complaint includes additional allegations regarding the punitive nature of the conditions of which Plaintiffs complained in their pro se complaint, as well as new claims regarding failure to provide treatment, failure to provide training, inadequate

---

[11] The Court notes that individuals civilly confined under MHL Article 10, who have in the past filed unsuccessful pro se conditions of confinement lawsuits challenging some of the same conditions being challenged by Plaintiffs (one of which is relied upon by Defendants in seeking summary judgment), either failed to file any opposition papers or filed incomplete papers in response to the defendants' summary judgment motions. *See, e.g., Yeldon v. Hogan*, No. 9:08-CV-769 (NAM/RFT), 2010 WL 983819, 2010 U.S. Dist. LEXIS 23825 (N.D.N.Y. March 15, 2010) (summary judgment granted against pro se plaintiff claiming, *inter alia*, denial of access to local media, restricted phone use, being forced into a test program in which he was denied treatment and denied interaction with the general population where plaintiff's only response to the motion was a response to defendants' statement of material facts), *aff'd*, 400 F. App'x 580 (2d Cir. 2010); *McChesney v. Hogan*, No. 9:08-CV-163 (FJS/DEP), 2010 WL 3602660, 2010 U.S. Dist. LEXIS 91681 (N.D.N.Y. Aug. 17, 2010) (grant of summary judgment to defendants recommended where pro se plaintiff failed to oppose grant of summary judgment to defendants on conditions of confinement claims that included, *inter alia*, prohibitions regarding access to local media, receipt of food packages, telephone usage policy, search policy, and treatment policies and practices), *Report-Recommendation accepted in its entirety*, 2010 WL 3584360, 2010 U.S. Dist. LEXIS 91322 (N.D.N.Y. Sept. 7, 2010); *see also June v. Blair*, 9:09-CV-323 (FJS/TWD), 2012 WL 1048463, 2012 U.S. Dist. LEXIS 42594 (N.D.N.Y. March 28, 2012) (dismissing Plaintiff's pro se claim regarding limitations on access to local newspapers and periodicals with prejudice on a Rule 12(b)(6) motion based on *McChesney*). Defendants have acknowledged that there is no law library available to the SOTP residents at CNYPC, plaintiffs in the above-cited cases were not represented by MHLS, and there is no indication that any of the plaintiffs received legal assistance from MHLS or any other legal counsel.

accommodation of Plaintiffs' religious practices, and Defendants' "privileging" system.  (Dkt. No. 52-2 at ¶¶ 15-20, 27-31.)  As pointed out in Plaintiffs' Reply Memorandum of Law in Support of Motion to Amend, Plaintiffs claim to have been forced to endure the conditions about which they complain for six to eight years as a result of being denied access to the courts.  (Dkt. No. 57 at 5.)

Based upon the foregoing, the Court concludes that Plaintiffs, who are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish, *Youngberg,* 457 U.S. at 321-22, have adequately asserted that their "nonfrivolous legal claim[s] ha[ve] been frustrated or [were] being impeded," *Lewis,* 518 U.S. at 353, as a result of Defendants' actions.  Therefore, the Court finds that at the very least, there are triable issues of fact as to the "actual injury" element of Plaintiffs' denial of access to courts claim.  *See Dorsey v. Hogan*, 511 F. App'x 96, 101 (2d Cir. 2013), in which the Second Circuit acknowledged in the context of the SOTP at CNYPC that:

> The Magistrate Judge found that plaintiff had failed to allege "actual injury," as required to state a claim for a denial of access to the courts.  Because we conclude, as discussed above, that plaintiff may have been confined in violation of the preliminary injunction, and that he may have been unable to vindicate his claim while incarcerated by virtue of his lack of access to a law library or counsel, we also conclude plaintiff has plausibly alleged that his efforts to pursue relief in state court were improperly hindered.  We therefore reverse the district court's dismissal of plaintiff's access-to-courts claim and remand for further proceedings.

### D.    Conditions of Confinement Claims in Plaintiffs' Proposed First Amended Complaint

As noted above, civilly committed persons "are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." *Youngberg,* 457 U.S. at 321-22.  Conditions of confinement claims asserted by civilly

committed plaintiffs must be asserted and evaluated under the Due Process Clause of the

Fourteenth Amendment. *See Groves v. New York*, No. 9:09-CV-0412 (GLS/DEP), 2010 WL

1257858, at * 6, 2010 U.S. Dist. LEXIS 29722, at * 21 (N.D.N.Y. March 1, 2010). "[D]ue

process requires that the conditions and duration of confinement [for civilly confined persons]

bear some reasonable relation to the purpose for which persons are committed." *Seling v. Young*,

531 U.S. 250, 265 (2001) (citations omittd).

Courts determining whether a plaintiff's constitutional rights have been violated are

required to balance "the legitimate interests of the State and the rights of the involuntarily

committed to reasonable conditions of safety and freedom from unreasonable restraints."

*Youngberg*, 457 U.S. at 321. In considering whether a civilly committed individual's Fourteenth

Amendment rights have been violated, courts must "show deference to the judgment exercised by

a qualified professional." *Youngberg*, 457 U.S. at 322. "[A] decision, if made by a professional,

is presumptively valid," and "liability may be imposed only when the decision of the professional

is such a substantial departure from accepted professional judgment, practice, or standards as to

demonstrate that the person responsible did not base the decision on such judgment." *Id*. at 323.

1.    Failure to Provide Treatment

Included in the Legislative findings with respect to MHL Article 10 are the following:

(b)    That some sex offenders have mental abnormalities that
predispose them to engage in repeated sexual offenses.
These offenders may require long-term treatment
modalities to address their risk to reoffend. They should
receive such treatment while they are incarcerated as a
result of the criminal process, and should continue to
receive treatment when that incarceration comes to an end.

(f)    That the system should offer meaningful forms of treatment
to sex offenders in all criminal and civil phases, including

> during incarceration, civil commitment, and outpatient
> supervision.

MHL § 10.01(b) and (f).

In their proposed first amended complaint, Plaintiffs allege that Defendants fail to provide them with treatment in that they spend no more than six or seven hours a week in treatment, the treatment staff is not qualified, and Plaintiffs remain in the same treatment phase for years, with the substance of the treatment program being recycled. (Dkt. No. 52-2 at ¶¶ 15-17.) Defendants' argument that the claims lacks merit and is futile is based upon: (1) the description of the four phase treatment program established for use at CNYPC set forth in the Nowicki Affidavit (Dkt. No. 37-2 at ¶ 95) and the CNYPC Phase Movement Policy (Dkt. No. 37-14); and (2) a claim that Plaintiffs' failure to provide treatment claim is a deliberate medical indifference claim, which at best constitutes a disagreement over treatment, or is a negligence or malpractice claim that does not support a claim under § 1983. (Dkt. No. 53 at 5-6.)

Defendants have not addressed any of the specific allegations in Plaintiffs' proposed amended complaint with regard to the alleged failure to provide treatment. As a part of their Reply Memorandum in Support of Motion to Amend Complaint, Plaintiffs have submitted an August 13, 2015, Decision and Order of the Hon. James C. Tormey, New York State Supreme Court Justice, County of Onondaga, in *State of New York v. Richard Z,* Supreme Court, Oneida County, Index No. CA2007-2605, on a hearing to determine whether petitioner in the case was a dangerous sex offender requiring continued civil confinement in the SOTP at CNYPC. (Dkt. No. 57 at 15-40.)

According to the Decision and Order, Justice Tormey has heard hundreds of cases under MHL Article 10, has visited facilities for civilly confined sex offenders in New York and Canada,

and has organized and prepared training programs and materials with the Office of Court Administration, which sponsors statewide training between OMH, MHLS, the New York Attorney General's Office, Parole, and the Judiciary. *Id*. at 34. Based upon the evidentiary record, Justice Tormey made numerous critical observations and findings about treatment in SOTP at CNYPC. *Id.* at 7-8. Judge Tormey referenced an expert opinion that "the programs at CNYPC have good ideas," but that the treatment program for the petitioner did not necessarily "adhere to the program parameters," *id.* at 19; the treatment program submitted for the petitioner did not have "program integrity," *id*; and that the petitioner was clearly suffering from treatment fatigue, a concept that the OMH Chief Psychiatric Examiner refused to acknowledge even existed. *Id*. at 22.

Justice Tormey found that there is no definition of "meaningful treatment" under MHL Article 10, § 10.01(a), and that there was no testimony at the hearing that adequately defined it. *Id*. at 33-34. He wrote:

> However, this Court knows what meaningful treatment "isn't when it sees it". In this case, we can say having repeated, attended and actively participated in over 700 group therapy sessions, having doctors testify inconsistently as to what is expected of patients in treatment to advance, having no individualized plan for [petitioner] is not "meaningful treatment" . . . . and simply focusing on *de minimis* rule violations to mandate a repeat of completed Phases and therapy is not "meaningful treatment". A common sense definition of "meaningful" can be found in Webster's College Dictionary as "significant, purposeful or (having) value". [Petitioner] is not presently receiving "meaningful treatment" and he has received the maximum psychological benefit for treatment as an in-patient at [CNYPC].

*Id*. at 34.

Justice Tormey concluded that "[i]t is time for the State of New York and OMH to review

26

[MHL Article 10] and develop individualized needs for patients which complies with 'meaningful treatment' and allows patients such as [petitioner] to progress through the program." *Id*. at 35-36. Justice Tormey took the "extraordinary measure of appointing a world-renowned expert . . . to render expert advice to the Court for a program of 'meaningful treatment' for [petitioner] as a condition of [ordering a regimen of Strict and Intensive Supervision and Treatment]." *Id*. at 39.

The Court finds that Defendants' mere reiteration of the parameters of the four phase treatment plan in effect at CNYPC and claim that Plaintiffs are, in effect asserting a medical indifference claim, do not establish futility. Rather, the Court finds that Defendants' failure to address the deficiencies in treatment specifically identified in Plaintiff's proposed first amended complaint, bolstered by Justice Tormey's Decision and Order, serves to highlight the existence of triable issues of fact with regard to whether Plaintiffs are being provided the treatment intended under Article 10 of the MHL.

2.  Failure to Provide Training

In their proposed first amended complaint, Plaintiffs allege that the severe limitation on employment opportunities and the complete absence at CNYPC of vocational training, which was available to them while they were incarcerated in the DOCCS system, leaves them wholly unprepared for re-entry into society should they be released from CNYPC. (Dkt. No. 52-2 at ¶¶ 18-20.) In his Affidavit in support of Defendants' motion for summary judgment, Nowicki states that "[w]ork is not a right nor is it required."[12] (Dkt. No. 37-2 at ¶ 88.) Nonetheless, Nowicki acknowledges that for many residents, work is an important part of their treatment. *Id*. According

---

[12] It appears from CNYPC's Privileging Policy that work is a privilege that may be taken away for clinical reasons. (Dkt. No. 37-13 at 1.)

to Nowicki, Phase II residents are eligible for up to fours hours of work a week, Phase III residents up to six hours a week, and Phase IV residents up to eight hours a week.[13] *Id.* Nowicki states that the residents allowed to work "are engaged in their treatment and value being involved in the vocational program," and that the "program is so popular that [CNYPC] has a waiting list." *Id.*

Despite Nowicki's acknowledgment that work is an important part of many residents' treatment, and that those who are allowed to work value their involvement in the program, he concedes that "[t]he reason for our wait list is based on the number of vocational staff, vocational space and available work. Since it is a limited resource, residents are not permitted unlimited hours of work." *Id.*

In their opposition to Plaintiffs' motion to amend, Defendants' "short answer" to the failure to provide training claim is that "CNYPC is not an employment program." (Dkt. No. 53 at 7.) Rather, it is a secure treatment facility for dangerous sex offenders who have been found by the Legislature to "require long-term specialized care and treatment designed to address the risks they pose to society." *Id.* Defendants assert that "[a]ccordingly, plaintiff's claim should be summarily dismissed since that is not why the CNYPC Sex Offender Treatment Program was created." *Id.* Defendants do not appear to argue that the limitations in the employment program and lack of vocational training as alleged by Plaintiffs are the result of reasoned judgment exercised by qualified professionals as opposed to a limitation of staff and resources and the absence of a specific legislative directive.

Whether or not SOTP was created as a jobs programs, Defendants have acknowledged the

_____

[13] According to Nowicki, four of the Plaintiffs are in Phase II and one is in Phase III. (Dkt. No. 37-2 at ¶ 89.)

28

importance of work to residents' treatment and have conceded that limited staff and resources force residents to be placed on waiting lists for valued employment.  Therefore, the Court finds that there are issues of fact that warrant counseled discovery with regard to Plaintiffs' claim that the severe limitation on employment opportunities and absence of vocational training, which was available while they were incarcerated, leaves them wholly unprepared for re-entry into society, presumably a goal of the CNYPC treatment program.

3.      Lack of Access to Media

In their proposed first amended complaint, Plaintiffs challenge the prohibition at CNYPC on residents having access to personal television sets and certain other electronic media devices; the punitive and arbitrary restrictions on access to a host of mainstream printed materials; the prohibition on access to local news media; and restrictions on access to movies, computers/laptops, videos, MP3 players, CDs and DVDs.  (Dkt. No. 52-2 at ¶¶ 21-24.)  Plaintiffs contend that the prohibitions and restrictions are far more severe than those imposed while they were incarcerated in the DOCCS system.  *Id*.

Defendants rely upon the evidence submitted in support of their motion for summary judgment for their opposition to Plaintiffs' motion to amend.  (Dkt. No. 53 at 8.)  The CNYPC Policy on Resident Access and Usage of Media, submitted by Defendants in support of their motion for summary judgment states that the CNYPC's SOTP "recognizes that the responsible use of music, videos, TV, and printed media can be an important aspect of therapeutic leisure, can possess educational value and may be incorporated into actual program curricula."  (Dkt. No. 37-4 at 1.)  The Policy also notes that SOTP has a responsibility to provide guidance to residents regarding media use and to provide limits and parameters such as prohibiting media content

determined to be clearly counter-therapeutic.  *Id.*  The Policy states that "[t]he SOTP staff shall maintain an individualized approach in the implementation of this policy and this policy does not replace the clinical experience of the Treatment Team."  *Id.*

In his Affidavit, Nowicki describes the policy with regard to outside news as one "which minimizes access to personal information about staff members and their families" so that inmates cannot use personal information about staff to further their own self-interests.  (Dkt. No. 37-2 at ¶¶ 24-25.)  According to Nowicki, a reasoned administrative determination was made that safety concerns outweighed the interest of the residents in having access to local media.  *Id*. at ¶ 27. Nowicki acknowledges that a significant number of magazines, newspapers, and periodicals are not permitted due to their content, i.e., materials containing nudity, inciting violence or civil disobedience, depicting how to make weapons, or targeted to minors.  *Id*. at ¶ 28.

Nowicki states in his Affidavit that the SOTP at CNYPC has several day rooms where residents are permitted to watch television shows found acceptable, but that personal televisions are not allowed because they might prevent residents from meaningful participation in programs offered at CNYPC.  *Id*. at ¶ 35.  According to Nowicki, television viewing is allowed only during non-program hours because "[t]ime spent sitting idle, watching television, will not provide a resident with any knowledge and skills to address his sex offending history."  *Id*. at ¶ 38.  Another concern expressed by Nowicki regarding personal televisions is that it would be impossible to monitor their viewing for unacceptable content.  *Id*. at ¶¶ 35-36.

Personal computers are not allowed because they have internet capability, and unfettered access to the internet would allow residents to view inappropriate websites.  *Id.* at ¶ 41.  DVDs, CDs and their players, along with MP3 machines are considered contraband because "[a]llowing

30

such devices would only further frustrate CNYPC constant vigilance in maintain (sic) a therapeutic and safe environment by giving residents an additional opportunity to receive and distribute contraband." *Id*. at ¶ 45.

Defendants rely upon the district court decisions in *McChesney v. Hogan*, 2010 WL 3584360, 2010 U.S. Dist. LEXIS 91322 (N.D.N.Y. Sept. 7, 2010) and *June v. Blair,* 9:09-CV-323 (FJS/TWD), 2012 WL 1048463, 2012 U.S. Dist. LEXIS 42594 (N.D.N.Y. March 28, 2012) in support of their motion for summary judgment and opposition to Plaintiffs' motion for leave to amend with regard to Plaintiffs' media access claim.  (Dkt. Nos. 37-18 at 14-15; 53 at 8.)  In *McChesney*, the District Court granted summary judgment to defendants on plaintiff's Fourteenth Amendment claim regarding media access restrictions at CNYPC.  In *June*, following *McChesney*, the District Court granted defendants' motion to dismiss a media access restriction claim for failure to state a claim on a Rule 12(b)(6) motion.

As noted above, Plaintiffs appeared pro se in both *McChesney* and *June* and presumably had no access to a law library.  Moreover, there is no indication they received legal assistance from MHLS or other legal counsel with regard to their media access claims.  Therefore, while *McChesney* and *June* no doubt provide guidance on the issue, the Court finds them to be of little precedential value.

Plaintiffs' constitutional claim regarding access to media must be balanced against the legitimate interests of the State in restricting that access.  *See Youngberg*, 457 U.S. at 321.  In that process, deference must be shown to the judgment of qualified professionals involved in developing, monitoring, and enforcing the media access policy.  *Youngberg*, 457 U.S. at 322.  Moreover, the decisions of those qualified professionals must be deemed presumptively valid.  *Id*.

The Court acknowledges the likelihood that the CNYPC policies regarding media access will ultimately be upheld in part, or in their entirety as they were in *McChesney* and *June* where plaintiffs did not have the benefit of counseled discovery. However, the Court finds that finds that given CNYPC's recognition that music, videos, TV, and printed media can be an important aspect of therapeutic leisure; the comprehensive nature of the media access restrictions at CNYPC and Policy statement that staff are to maintain an individualized approach in its application; and Plaintiffs' assertion that the restrictions surpass those imposed in the DOCCS system, Plaintiffs should be given the opportunity to conduct counseled discovery with regard to their media access claims prior to summary judgment motions in the case.

### 4.    The Visitor Program

Plaintiffs allege in their proposed first amended complaint that the restrictions on visitation at CNYPC are more restrictive than those imposed while they were incarcerated in the DOCCS system and are so restrictive as to be punitive. (Dkt. No. 52-2 at ¶ 25.) More specifically, Plaintiffs complain of the requirement that visitors must contact a CNYPC official seven days in advance and be placed on a schedule to visit; visitation is limited to Saturdays in Building 39 where one of the Plaintiffs is housed, visits are permitted only from 9:45 am to 2:45pm; and visitors are not allowed to bring food. *Id.*

Defendants have submitted the CNYPC Visitation Policy in support of their motion for summary judgment. (Dkt. No. 37-6.) According to the Policy, "[t]he Sex Offender Treatment Program (SOTP) recognizes the importance of the residents to have an opportunity for their family to have a role in their treatment and recovery and visit with significant others." *Id.* at 1.

In his Affidavit, Nowicki states that "[v]isiting at facilities is strongly encouraged for both

family and friends as it helps maintain ties to the community," although according to Nowicki, visitation should not interfere with regularly scheduled programs and because of the nature of the SOTP population at CNYPC, visitation must be pre-approved.   (Dkt. No. 37-2 at ¶¶ 47-48.)

Despite Defendants' acknowledgment of the importance of visits by family and friends to residents' treatment and recovery, Nowicki discloses in his Affidavit that SOTP has only one visiting room in each of its two buildings, and there are significant space limitations in those two rooms.  *Id*. at ¶ 48.  According to Nowicki, Building 39 houses 180 residents, and the visiting room has a capacity of forty people, including residents and staff.  *Id*.  Building 41 houses up to 150 residents and the visiting room has a capacity of thirty people, including residents and staff. *Id*.  The Visitation Policy indicates that Buildings 39 and 41 have visitation on Saturdays and major holidays from 9:45am to 2:45pm.  (Dkt. No. 37-6 at 1.)  Building 41 also has visitation on Sundays from 9:45am to 2:45pm.  *Id*.

Given the acknowledgment in both the Visitation Policy (Dkt. No. 37-6 at 1) and the Nowicki Affidavit (Dkt. No. 37-2 at ¶ 47) of the therapeutic importance of visitation with family and friends, and the absence of any claim by Defendants that the space allowed for visitation is limited for therapeutic reasons, the Court finds that there are triable issues of fact with regard to Plaintiffs' claim, and Plaintiffs should be allowed an opportunity to engage in discovery on the visitation issue.

### 5.    Physical Restraints

Plaintiffs allege in their proposed first amended complaint that they are placed in extremely painful physical restraints when they are taken out of the facility.  (Dkt. No. 52-2 at ¶ 26.)  They allege, upon information and belief, that such painful restraints are not used in two

other New York SOTP facilities or at local or county jails.  *Id.*

In support of their motion for summary judgment, Defendants rely upon the Use of Safety and Security Devices for Transport Purposes Policy, which provides for the use of safety and security devices for all SOTP resident transports, (Dkt. No. 37-3 at 3), and the Nowicki Affidavit which explains that the use of such restraints in resident transports is "designed to ensure staff and public safety." (Dkt. No. 37-2 at ¶ 18.)  In *Balkum v. Sawyer*, No. 6:06-CV-1467 (NPM), 2011 WL 5041206, at * 9-10, 2011 U.S. Dist. LEXIS 122467, at * 27 (N.D.N.Y. Oct. 21, 2011), the court granted defendants' motion for summary judgment on the plaintiff's challenge to  CNYPC's policy of restraining residents with handcuffs, waist chains, and leg shackles during transport, finding that plaintiff had not shown that "the use of restraints in this manner and for this purpose represents a substantial departure [from] accepted professional judgment, standards, or practice." *See also June v. Hogan,* No. 9:09-CV-0323 (FJS/TWD)*,* 2014 WL 502536, 2014 U.S. Dist. LEXIS 16039, at *11-12 (N.D.N.Y. Jan. 16, 2014) (recommending summary judgment for defendants on plaintiff's Fourteenth Amendment challenge to use of shackles and handcuffs during transport outside the facility), *Report-Recommendation accepted in its entirety*, 2014 WL 502536 at * 1; *Miller v. Dobier*, 634 F.3d 412, 414-15 (7th Cir. 2011) (detainee under sexually violent persons act had no constitutionally protected liberty interest in avoiding the "black box" restraints).

The Court recognizes based on the legitimate state interest in ensuring staff and public safety, as well as legal precedent, that Defendants may more likely than not ultimately prevail on this claim.  However, given Defendants' failure to respond to the allegation in Plaintiffs' proposed first amended complaint that the restraints about which Plaintiffs complain are not utilized at two

other SOTP facilities, the Court finds that Plaintiffs should be allowed the opportunity to conduct discovery on the claim.

6.     The Privileging System

In their proposed first amended complaint, Plaintiff challenge the privileging system at CNYPC in which, according to Plaintiffs, "negative consequences" are imposed based upon whether residents are perceived to have exhibited "positive conduct and attitudes," to be making "clinical progress in the program," or to be "persistently fail[ing] to meet community expectations." (Dkt. No. 52-2 at ¶ 28.) Plaintiffs contend that the imposition of "negative consequences," often for minor in fractions, is, in practice arbitrary, capricious and unconstitutionally punitive." *Id*. at ¶ 29.

Defendants contend generally in opposition to Plaintiffs' motion to amend, that the privileging policies, in which residents must participate in the sex offender program to earn privileges, "is an effective treatment approach in assisting in the development of pro-social, desirable behavior." (Dkt. No. 53 at 10.) They do not directly address the imposition of negative consequences which Plaintiffs allege are a part of the privileging policy and the claim that, in practice, they are imposed in an arbitrary, capricious, and unconstitutionally punitive manner.

Plaintiffs have had no opportunity to conduct discovery concerning their privilege system claims. In his Decision and Order in *State of New York v. Richard Z*, Justice Tormey addressed an instance of the imposition of negative consequences for minor infractions:

> Richard Z. received a demotion to Phase II (acquisition and practice) for receiving non-toxic glue from his 89 year old mother taped in a sweatshirt pocket; paint from his Brother, which was delivered by mail order from a non-approved vendor; and referred to by the New York State Attorney General, a non-offensive DVD title "Blue Rose" rated in the PG category, within a greeting card.

35

> Additionally, triple hearsay allegations were written in a report wherein one worker told another worker that he overheard Richard Z. on the telephone with his Mother asking her to send $80.00 in cash to him, which would be a violation of the rules of CNYPC if cash was received. No cash had been received or reportedly ever found.

(Dkt. No. 57 at 16.) Justice Tormey concluded that "simply focusing on *de minimis* rule violations to mandate a repeat of completed Phases and therapy, is not 'meaningful treatment.'" *Id.* at 34.

In light of Defendants' failure to address Plaintiffs' "negative consequences" claim and Justice Tormey's Decision and Order, the Court finds that it reasonable to conclude that triable issues of fact exist with regard to Defendants' privileging system and whether it is implemented in an arbitrary, capricious, punitive manner, and that Plaintiffs should be given an opportunity to conduct counseled discovery on the claim.

### E. Plaintiff's Free Exercise of Religion Claim

Plaintiffs allege in their proposed first amended complaint that Defendant Rosado, who is a follower of Neopaganism, is not allowed to practice the traditions of his religion at CNYPC, and that no spiritual leader is available at the facility. (Dkt. No. 52-2 at ¶ 30.) They also allege that Suggs, who is a Muslim who follows the religion of Islam, has limited access to an Imam, to an appropriate location for worship, and to Islamic media. *Id.* at ¶ 31.

In their opposition to Plaintiffs' motion to amend, Defendants do not deny Rosado and Suggs' claims. (Dkt. No. 53 at 11.) Rather, they state generally that CNYPC religious policy (Dkt. No. 37-17) permits any resident to practice his religion as he may chose, and quote from Nowicki's Affidavit in support of Defendants' motion for summary judgment that Rosado and

Suggs "are permitted to practice their religions, observe religious holy days, maintain religious texts and follow dietary restrictions of their faith." (Dkt. No. 53 at 11.)

Therefore, the Court finds that there are triable issues of fact with regard to Plaintiffs' free exercise of religion claim that warrant discovery.

## V. CONCLUSION

Based upon the foregoing, the Court recommends that Plaintiffs' motion for leave to file an amended complaint (Dkt. No. 51 ) be granted, and that the Clerk be directed to file Plaintiffs' proposed first amended complaint (Dkt. No. 52-2 at 4-13) and that it become the operative pleading in the case; and that a new Scheduling Order allowing the parties a reasonable period of time for discovery and motions be agreed upon with the Court. The Court further recommends that Defendants' motion for summary judgment (Dkt. No. 37) be denied without prejudice to refiling after the conclusion of discovery.

**ACCORDINGLY**, it is hereby

**RECOMMENDED** that Plaintiffs' motion for leave to file a first amended complaint (Dkt. No. 51 ) be granted, and that the Clerk be directed to file Plaintiffs' proposed first amended complaint (Dkt. No. 52-2 at 4-13), and that it become the operative pleading in the case; and it is further

**RECOMMENDED** that a new Scheduling Order allowing the parties a reasonable period of time for discovery and motions be agreed upon with the Court; and it is further

**RECOMMENDED** that Defendants' motion for summary judgment (Dkt. No. 37) be denied without prejudice to refiling after the conclusion of discovery; and it is further

**RECOMMENDED** that the Clerk's Office be directed to correct the docket to show the

substitution of Peter Russell, currently the Acting Executive Director of CNYPC, for former Executive Director Maureen Bosco, as a Defendant in the case; the substitution of Ann Sullivan, currently the Commissioner of the New York Office of Mental Health, for former Acting Commissioner of the New York Office of Mental Health Kristin Woodlock, as a Defendant in the case; and the termination of Raymond Lagree as a Plaintiff in the case.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (per curiam)); 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 72, 6(a).

Dated: September 14, 2015
      Syracuse, New York

Therese Wiley Dancks
United States Magistrate Judge